UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Mary Moore**

                                       Case No. 16-cv-365-PB
                                       Opinion No. 2017 DNH 099

**US Social Security Administration,
Acting Commissioner, Nancy A. Berryhill**


**MEMORANDUM AND ORDER**

Mary Moore challenges the Social Security Administration's decision to deny her claim for supplemental security income (SSI) benefits. She argues, among other things, that the Administrative Law Judge ("ALJ") improperly determined that she had the lifting capacity required for light work. The Acting Commissioner moves for an order affirming the ALJ's decision.

## I. BACKGROUND

In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 12). Because that joint statement is part of the court's record, I do not recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

## II. STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence

2

in the record. Irlanda Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id. But the ALJ's decision must enable the reviewing court to determine whether the ALJ engaged with conflicts, rather than failing to consider them. See Dube v. Astrue, 781 F. Supp. 2d 27, 35 (D.N.H. 2011); Lord v. Apfel, 114 F. Supp. 2d 3, 13-14 (D.N.H. 2000); see also Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

## III. ANALYSIS

Moore is a fifty-five-year-old woman with a scattered work history who alleges disability as of November 15, 2007. See Tr. at 322; Doc. No. 12 at 1 n.1. She alleges disabling impairments of fibromyalgia, lupus, lobectomy, degenerative joint disease, vertigo, chronic obstructive pulmonary disease, vocal cord dysfunction, panic disorder, anxiety disorder, and post-traumatic stress disorder. She alleges that these impairments impose both exertional and non-exertional limitations on her ability to work. The ALJ found that Moore was not disabled because she could perform the light work job of price marker.

On appeal, Moore argues that the ALJ improperly determined that she had the lifting capacity required for light work even though no medical opinion supported that determination. In response, the Acting Commissioner argues that Moore waived her

3

challenge by not raising it before the ALJ and, in the alternative, the ALJ reasonably interpreted the medical opinion evidence to arrive at his lifting-capacity determination.

I begin by explaining why Moore has not waived her challenge. Turning to the merits, I conclude that the ALJ did not support his determination with substantial evidence because he misstated a critical finding and failed to adequately address conflicts in the evidence.

**A. <u>Waiver</u>**

The Acting Commissioner argues that Moore waived her challenge to the lifting determination because she "did not raise it before the ALJ." <u>See</u> Doc. No. 11-1 at 5. Because Moore's lifting restriction was presented to the ALJ, a subsequent remand hearing was limited to a different issue, and she squarely raised her argument in this court, I do not find waiver.

1. <u>Procedural History</u>

There were two hearings before the ALJ. In the first, Moore testified that "her symptoms greatly restrict her ability to . . . lift . . . ." Tr. at 70 (ALJ's characterization of testimony). She explained, "I can't lift — sometimes I can't lift my grandchildren." Tr. at 153. She further explained, "[t]he most I can do for physical activity right now is to basically do like leg lifts and that's really hard to do." Tr.

at 156. She testified that she had difficulty holding even very light items like dustpans and knives, and could not pursue favorite activities such as knitting and painting due to pain or shaking hands. See Tr. at 157–59. In addition, Moore's attorney highlighted therapist Benjamin Otis' functional capacity assessment, which found significant lifting restrictions. Her attorney cited the corresponding exhibit and stated, "[s]o, I mean, that's in evidence, so I really don't have to go through that." Tr. at 166. Her attorney also specifically asked the vocational expert about the impact of a lifting restriction on her ability to transition to the jobs identified, including price marker, inquiring whether, "if she were unable to lift two pounds on a frequent basis, would that eliminate being able to perform any of those positions?" Tr. at 172–73. The expert answered that the restriction would indeed eliminate those jobs. Tr. at 173.

Soon after the hearing, the ALJ issued a decision concluding, at step five of the sequential process for evaluating disability claims, that Moore was not disabled because she could perform available light work jobs. See 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. 416.920. In assessing her residual functional capacity ("RFC"), the ALJ did not recognize a lifting restriction. Moore appealed to the Appeals Council, which vacated the ALJ's decision. The Appeals Council remanded

5

for a new hearing to specifically address a discrepancy in testimony by the vocational expert, who had failed to explain his conclusion that Moore could perform light work jobs that generally require standing/walking for six hours despite Moore's restriction to four hours.  Tr. at 207.  The Appeals Council remanded the case to resolve this discrepancy and directed the ALJ to ask the vocational expert particular questions about it.  Tr. at 207–08.  The Appeals Council did not opine on other aspects of the ALJ's decision.  See Tr. at 207–08.

The remand hearing lasted only eighteen minutes, and Moore did not attend.  See Tr. at 124, 134.  At the hearing, the ALJ explained that the Appeals Council remanded the case to resolve the discrepancy in the vocational expert's testimony pertaining to the standing/walking restriction and stated, "[s]o, at this point, we will be going to the [vocational expert]."  Tr. at 124–25.  After briefly discussing new evidence submitted after the first hearing, the ALJ called the expert and began asking questions within the scope of the remand.  Tr. at 128–31.  The ALJ concluded his questioning with a hypothetical concerning jobs available to someone restricted to sedentary work.  Tr. at 131.  The ALJ then stated, "Counsel, your claimant would Grid out under the [sedentary] hypothetical.  Do you have any questions for the vocational expert, sir?"  Tr. at 131.  Moore's attorney highlighted that "it's a short hearing," Tr. at 131,

6

and asked questions essentially within the scope of remand. See Tr. at 131-33.

Soon after the hearing, the ALJ issued a new decision that again concluded that Moore was not disabled. Tr. at 77. As a preliminary matter, the ALJ found that Moore constructively waived her right to appear at the remand hearing because traffic and incorrect directions do not amount to "good cause." Tr. at 64-65. Turning to the merits, the ALJ explained that "the sole basis for the remand related to the handling of the vocational expert's testimony" at step five," and "[t]he Appeals Council did not identify any issues with the analysis at steps one, two, three, and four of the sequential evaluation or with the analysis and formulation of [Moore's] residual functional capacity." Tr. at 66. Accordingly, the ALJ explained that the new decision "restates much of the previous analysis." Tr. at 66. For example, in explaining why Moore could perform light work, the ALJ quoted pages of analysis from the first decision. Tr. at 70-74. The ALJ concluded that Moore could perform the light work position of price marker. See Tr. at 76-77; Dep't of Labor, Dictionary of Occupational Titles 209.587-034, 1991 WL 671802 (4th ed. 1991) [hereinafter DOT 209.587-034]. The Appeals Council affirmed.

Moore appealed to this court. She argues on appeal that the ALJ did not adequately explain his decision and his

7

assessment of her lifting capacity was not based on substantial evidence. See Doc. No. 8-1 at 5-7. She explains that no medical opinion, including the opinion of therapist Otis relied upon by the ALJ, found a lifting capacity compatible with light work. In response, the Acting Commissioner argues that Moore has waived this argument because she "neglected to raise any concerns about the ALJ's interpretation of therapist Otis's report in the pre-remand decision, which is unchanged in the decision presently before the Court." Doc. No. 11-1 at 5–6 (internal citation omitted).

2. Waiver

I conclude that Moore did not waive her challenge. Social Security proceedings are governed by an informal, inquisitorial model in which the ALJ has a "duty to investigate the facts and develop the arguments" on each side. See Sims v. Apfel, 530 U.S. 103, 110–11 (2000). Moore's lifting capacity was placed squarely at issue during the original, full hearing before the ALJ. She explicitly told the ALJ about significant restrictions on her lifting capacity and gave supporting examples. In addition, her attorney drew the ALJ's attention to therapist Otis' RFC assessment, which likewise found significant lifting restrictions. Moore's attorney also posed a hypothetical to the vocational expert concerning the prohibitive effect that a frequent-lifting restriction would have on her ability to

perform light work jobs.  In these ways, the lifting restriction was squarely placed at issue during the first hearing.

Moore did not waive challenges to the ALJ's subsequent decision by not presenting them during the limited hearing on remand from the Appeals Council.  Cf. Sims, 530 U.S. at 110–14 (holding that judicial review did not require issue exhaustion before the Appeals Council).  See generally Jon C. Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289, 1341–42 (1997) (describing imperfect fit between issue-exhaustion requirement and inquisitorial Social Security proceedings).  First, Moore herself did not attend the remand hearing, and the ALJ denied her the opportunity to appear at a new hearing.  Even if she constructively waived her right to appear, she did not also thereby waive her challenges to the ALJ's decision.  Second, the Appeals Council remanded on a different issue, and the eighteen-minute remand hearing was limited to that specific, granular concern. Tr. at 66 (noting that "the sole basis for the remand related to the handling of the vocational expert's testimony"), 64 (noting that the ALJ "proceeded with the hearing in order to take vocational expert testimony").  Finally, because the ALJ posed a sedentary-work hypothetical to the vocational expert on remand, Moore lacked notice that the ALJ would reach the same RFC assessment as

before.  Cf. Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001) (finding waiver where ALJ stopped questioning vocational expert at step four, but claimant failed to alert ALJ that step-five inquiry was necessary due to her sporadic work history).  For these reasons, Moore did not waive her challenge to the ALJ's lifting capacity determination.

My conclusion respects the administrative process.  The ALJ had a duty to investigate the facts and support his decision with substantial evidence.  At the full hearing, Moore and her attorney played their role.  After the ALJ issued an unfavorable decision, Moore did not waive all challenges to it by not raising them at the limited remand hearing.  Indeed, a contrary result might effectively expand all remand hearings to address all potential concerns with the ALJ's original decision, even where that decision was vacated on a narrow and separate issue, the outcome might change, and the claimant sought further Appeals Council review.  Finally, my conclusion does not reflect a general rule against waiver, but is instead limited to the facts before me.  In light of these considerations, I decline to find that Moore waived her right to challenge the ALJ's assessment of her lifting capacity.

**B.    Lifting-Capacity Determination**

Turning to the merits, Moore argues that the ALJ lacked substantial evidence for his lifting-capacity determination

because it is unsupported by any medical opinion in the record and largely unexplained. In response, the Acting Commissioner argues that the ALJ reasonably interpreted conflicts in the opinion evidence. For the following reasons, I conclude that the ALJ failed to adequately explain his lifting-capacity determination and support it with substantial evidence.

The only medical evidence discussed by the ALJ that functionally assesses Moore's lifting capacity was pronounced by therapist Otis. Otis' report states that from "Waist to Floor" Moore could lift 18 pounds rarely, 16 pounds occasionally, and 2 pounds frequently. Tr. at 1360. From "Waist To Crown (Handles)," Moore could lift 12 pounds rarely, 8 pounds occasionally, and 2 pounds frequently. Tr. at 1360. From "Waist To Crown (Preferred)," Moore could lift 18 pounds rarely, 14 pounds occasionally, and 3 pounds frequently. Tr. at 1360. Moore could "Front Carry" 25 pounds rarely, 18 pounds occasionally, and 3 pounds frequently. Tr. at 1360.[1] Otis also evaluated a variety of other functional capacities. A line in his evaluation summarily states, "US Department of Labor Physical Demand Level Light." Tr. at 1359. The ALJ gave Otis'

---

[1] The transcript contains a poor visual reproduction of the number reflecting Otis' finding for front-carrying on a frequent basis. See Tr. at 1360. The parties jointly read the number as a "three," Doc. No. 12 at 6-7, but the ALJ at one point reads it as a "five," see Tr. at 71. That difference is immaterial to the disposition of this appeal.

11

opinion "significant" weight and vaguely stated that it "provides support for" his own RFC assessment. Tr. at 73.

The ALJ concluded that Moore could perform light work. See Tr. at 69. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The ALJ did not find additional lifting restrictions. A vocational expert testified that someone with that functional capacity could perform the light work job of price marker, which involves "[e]xerting up to 20 pounds of force occasionally . . . and/or up to 10 pounds of force frequently." DOT 209.587-034. Because there were a sufficient number of price marker positions available to Moore, the ALJ concluded that she was not disabled.[2]

The ALJ's lifting-capacity determination is flawed. The ALJ implicitly determined that Moore could lift 10 pounds frequently. See Tr. at 69; § 416.967(b). The ALJ apparently relied on Otis' RFC assessment, stating that Otis "opined [to] an ability to lift . . . approximately eighteen pounds frequently." Tr. at 73. But this is simply incorrect. In reality, Otis opined that Moore could frequently lift only three

---

[2] Although the vocational expert testified on remand that the number of price-marker positions available to Moore was reduced by 75% due to her standing/walking restriction, the ALJ concluded that the number remaining was sufficient. See Tr. at 77.

12

pounds. Tr. at 1360. Because light work entails "frequent lifting or carrying of objects weighing up to 10 pounds," § 416.967(b), the ALJ's misstatement is material and not harmless. See Wooldridge v. Bowen, 816 F.2d 157, 161 (4th Cir. 1987) (recognizing reversible error where ALJ concluded that claimant could perform light work even though she could lift no "more than 20 pounds at a time with <u>occasional</u> lifting or carrying of 10 pounds" (quoting ALJ)). If the ALJ had determined instead that Moore had a three-pound restriction that limits her to sedentary work, she would be disabled under the Medical-Vocational Guidelines. See Tr. at 131 (ALJ stating that Moore "would Grid out under the [sedentary] hypothetical"); 20 C.F.R. §§ 404.1563(d); Pt. 404, Subpt. P, App. 2, Rule 201.09. Moreover, the ALJ may well have discovered that Moore cannot transition to the light work job of price marker. See Tr. at 172–73 (vocational expert answering that hypothetical inability to lift "two pounds on a frequent basis" would eliminate price marker position); see also §§ 416.912(f) (2015) (since amended) (providing that Social Security Administration "must provide evidence about the existence of work in the national economy that [the claimant] can do"), 416.920(g), 416.960(c). With a greater lifting restriction, Moore may be simply unable to perform that job, see Tr. at 172–73, or it may not be available in sufficient numbers in the economy when accounting for the

13

lifting restriction, cf. Tr. at 128-31 (finding that restriction to four hours standing/walking decreased by 75% the number of available price marker positions, which generally require six hours). These considerations undermine the ALJ's conclusion that Moore is not disabled.

The Acting Commissioner does not address the ALJ's misstatement. Instead, the Acting Commissioner argues that the ALJ could have relied on an entirely different assessment, by state reviewing physician Jonathan Jaffe, finding that Moore could frequently lift 10 pounds. This argument is a nonstarter. The ALJ did not discuss Dr. Jaffe's RFC assessments, let alone give them weight.[3] See 20 C.F.R. § 416.927(e)(2)(ii) (2015) (amended 2017); SSR 96-6p, 1996 WL 374180, at *2, 4 (July 2, 1996) (requiring that ALJ address and explain weight given to state agency physician's opinion). The ALJ certainly did not explain that he was adopting only this discrete finding by Dr. Jaffe, which was based only on a medical record review, over the

---

[3] The ALJ alludes to Dr. Jaffe's opinion only through an oblique reference to "the State agency medical and psychological consultants." Tr. at 74. The ALJ states in a perfunctory way that while their opinions differ from the ALJ's, "they deviate only slightly," and unspecified "[h]earing level evidence supports the deviations." Tr. at 74. Moreover, Dr. Jaffe's opinion contains its own discrepancy. Dr. Jaffe found that Moore could lift only 10 pounds occasionally, Tr. at 180, which falls short of the light work ability ultimately found by the state agency. See Tr. at 185; 20 C.F.R. § 416.967(b). Since the ALJ does not discuss Dr. Jaffe's functional assessments, he neither acknowledges nor attempts to resolve that discrepancy.

14

finding from Otis' more recent in-person examination.  See §
416.927(c)(1) (explaining that opinion by examining source is
generally entitled to greater weight than one by non-examining
source).  For these reasons, the ALJ did not use Dr. Jaffe's
finding to support the lifting-capacity determination.

The Acting Commissioner next argues that the ALJ reasonably
interpreted Otis' opinion to arrive at the lifting-capacity
determination.  This argument also fails.  The ALJ sought to
reconcile a different discrepancy: between the maximum lifting
required for light work and therapist Otis' finding that Moore
could only <u>occasionally</u> lift 18 pounds.  <u>See</u> Tr. at 71 n.2.  The
ALJ apparently determined that Moore could perform the maximum
lifting required for light work based on Otis' finding that she
could occasionally lift 18 pounds and rarely lift 25 pounds.
Although the ALJ does not explain his reasoning, it is
apparently grounded in the diverging definitions of
"occasionally" used by the Social Security regulation and
therapist Otis.  Whereas SSR 83-10 defines "occasionally" to
mean "from very little up to one-third of the time," SSR 83-10,
1983 WL 31251, at *5 (January 1, 1983), therapist Otis defined
it to mean from six percent to one-third of the time, with
anything less labeled "rarely."  <u>See</u> Tr. at 1360.  The ALJ
apparently concluded that Moore's ability to "rarely" lift

twenty-five pounds satisfied the maximum exertion requirement of light work.

I need not resolve this issue.[4]  The ALJ purported to explain why Moore has the capacity for the "occasional" or maximum lifting required for light work.  The ALJ did not, however, explain why Moore has the capacity for "frequent" lifting required for light work.  Instead, the ALJ relied on therapist Otis' assessment — which found a three-pound frequent-lifting capacity that falls short of the ten pounds required for light work — but misstated Otis' frequent-lifting determination as reflecting an eighteen-pound capacity.  The conflict in the evidence went unacknowledged and unaddressed.

In this context, the ALJ's perfunctory mention that Otis' report states "Department of Labor Physical Demand Level Light"

---

[4] I also need not address potential differences in the various definitions of light work.  See 20 C.F.R. § 416.967 ("Light work involves lifting no more than 20 pounds at a time . . . ."); Doc. No. 8-1 at 5 (Moore's interpretation of section 416.967 as imposing a 20-pound occasional-lifting requirement); SSR 83-10 at *5 (stating, under elaboration of sedentary work, that "'Occasionally' means occurring from very little up to one-third of the time"); DOT 209.587-34 (stating that the light work required for price marker job involves "[e]xerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time)" (emphasis added)); Doc. No. 11-1 at 6 n.2 (Acting Commissioner's interpretation of Dictionary of Occupational Title's "and/or" language as "and"); Tr. at 71, 1359 (unexplained "Department of Labor Physical Demand Level Light" standard).

does not amount to substantial evidence.  See Tr. at 71, 1359.
Neither Otis, the ALJ, nor the Acting Commissioner provide
substantive content to this vague descriptor or provide a legal
citation.  Nor do they explain why that vague and perfunctory
statement controls over Otis' particularized functional
findings.  Nor do they compare it to the Social Security
regulations, administrative guidance, or the requirements of a
price marker job.  Cf. Salinas v. Sullivan, No. 91-C-2450, 1992
WL 51706, at *2 (N.D. Ill. Mar. 9, 1992).  These failures are
compounded by the ALJ's misstatement of Otis' frequent-lifting
finding by a factor of six when according Otis' opinion
significant weight and using it to fashion the RFC assessment.
For these reasons, I cannot meaningfully evaluate whether the
ALJ supportably resolved material conflicts in the evidence, or
instead ignored them.  See Dube, 781 F. Supp. 2d at 35; Lord,
114 F. Supp. 2d at 13–14; Garfield, 732 F.2d at 610.  I conclude
that the ALJ did not adequately explain the lifting-capacity
determination and support it with substantial evidence.

## IV.  CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), I grant
Moore's motion to reverse the decision of the Acting
Commissioner (Doc. No. 8) and deny the Acting Commissioner's
motion to affirm the decision (Doc. No. 11).  I remand the case

17

to the Social Security Administration for further proceedings consistent with this order.

**SO ORDERED.**

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

May 25, 2017

cc: Laurie Smith Young, Esq.
Robert J. Rabuck, Esq.
Terry L. Ollila, Esq.